UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ OCT 22 2013 ★

BROOKLYN OFFICE

UNITED STATES OF AMERICA

– against –

JAMES HARRIS

Defendant.

12-CR-448

Statement of Reasons Pursuant to
18 U.S.C. § 3553(c)(2)

**JACK B. WEINSTEIN, Senior United States District Judge:**

A sentencing court shall "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). If the sentence is not of the kind prescribed by, or is outside the range of, the Sentencing Guidelines referred to in Section 3553(a)(4), the court shall indicate the specific reasons for imposing a sentence different from that provided by the Guidelines. 18 U.S.C. § 3553(c)(2). These "reasons must also be stated with specificity in a statement of reasons form." *Id.* Even though the Guidelines are now "advisory" rather than mandatory, *see United States v. Booker*, 543 U.S. 220, 245-46 (2005), the sentencing court must still adhere to the requirements of 18 U.S.C. § 3553(c)(2). *United States v. Jones*, 460 F.3d 191, 197 (2d Cir. 2006).

The sentencing court's written statement of reasons shall be "a simple, fact-specific statement explaining why the Guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Rattoballi*, 452 F.3d 127, 138 (2d Cir. 2006). Such a statement should demonstrate that the court "'considered the parties' arguments' and that it has a 'reasoned basis for exercising [its] own legal decisionmaking authority.'" *United States v. Cavera*, 550 F.3d 180, 193 (2d Cir. 2008) (en banc) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)) (alterations in original). Although a written statement of reasons pursuant to 18

1

U.S.C. § 3553(c)(2) is not necessary when the court imposes a guidelines sentence, the statement may nevertheless assist the reviewing court and the United States Sentencing Commission in understanding the reasons for the court's sentence.

On December 13, 2012, James Harris pled guilty to Count One of a one-count superseding information which charged him with conspiring to commit securities fraud. *See* 18 U.S.C. § 1349. The underlying indictment was dismissed.

Since approximately 1995, Harris has been self-employed as a securities trader. In 2009, Harris began providing investment tips to John Doe #1, an American investment adviser trading on behalf of John Doe # 2. Harris was to receive a cut of the gains his tips generated for John Doe #2. He came to believe that John Doe #2 was withholding payment and owed Harris several hundred thousand dollars.

Harris, a citizen of the United Kingdom, legally immigrated to the United States in 2011. In the fall of 2011, Damian Perna, a financial advisor who had advance access to earnings reports, provided Harris with a draft press release regarding the quarterly earnings report for Vimpelcom, a Russian company that trades in the United States. Before Vimpelcom's report was made public, Harris provided it to John Doe #1 in the hopes that it would entice John Doe #2 to remunerate Harris. Around this time, Harris also told Tayyib Ali Munir—the acquaintance who had initially introduced him to John Doe #1—that Harris had access to inside information. Munir pressured John Doe #1 to buy Harris's information.

On March 6, 2012, Harris met with John Doe #1, who was by this point cooperating with the government as a confidential source and recording his communications with Harris. Harris provided John Doe #1 with a Vimpelcom press release to be issued on March 13, 2012 that indicated a negative outlook for the company. Harris suggested that John Doe #1 short

2

Vimpelcom stock and pay Harris half of the profit, which would have netted Harris approximately $1 million. John Doe #1 never actually executed this trade, but on April 19, 2012, he paid Harris $50,000 in cash to placate him regarding the money he believed he was owed by John Doe #2.

Harris was sentenced on October 8, 2013. The proceeding was videotaped in order to develop an accurate record of the courtroom atmosphere and the factors and considerations that a district court must evaluate in imposing a sentence under 18 U.S.C. § 3553(a). *See In re Sentencing*, 219 F.R.D. 262, 264–65 (E.D.N.Y. 2004) (utility of videotape on appeal).

The total offense level is 5 and defendant's criminal history category is category I. The Guidelines range of imprisonment is between 0 and 6 months. *See* U.S.S.G. § 5E1.2(b). The base offense level is 7 because the defendant was not an investment advisor. The calculation of the total offense level reflects a two-point downward adjustment for the defendant's acceptance of responsibility. No more than five years supervised release may be imposed. *See* 18 U.S.C. § 3583(b)(1). The Guidelines recommend supervised release of two years to five years. *See* U.S.S.G. § 5D1.2(a)(1). Probation is expressly precluded by statute. *See* 18 U.S.C. § 3561(a)(2); U.S.S.G § 5B1.1(b)(2). The Guidelines range for a fine is from $250 to $5,000. *See* U.S.S.G. § 5E1.2(c)(3). An order of restitution is mandatory. *See* 18 U.S.C. § 3663A; U.S.S.G. § 5E1.1.

Harris was sentenced to time served and two years of supervised release. A $100 special assessment was imposed. There is no restitution because there is no loss and no identifiable victim in this case. No fines were imposed because the defendant does not have any assets, and it is unlikely that he will have any in the foreseeable future to pay a fine. A separate order of forfeiture had been issued requiring the defendant to repay the $50,000 he received from John

Doe #1 and to forfeit his Ducati motorcycle as property derived from the securities fraud. The motorcycle has since been foreclosed upon. A revised forfeiture order was entered requiring the defendant to make an additional cash payment of $19,240 to the government, payable to the U.S. Marshals Service, over the next six months in lieu of surrendering the motorcycle. The defendant intends to self-deport from the United States. As a condition of his supervised release, he may not return to the United States illegally.

Respectful consideration was given to the sentencing guidelines, the Sentencing Commission's policy statements, and all other factors listed under 18 U.S.C. § 3553(a) to ensure that the sentence is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. *See* 18 U.S.C. § 3553(a). A sentence within the guidelines range is appropriate in this case. *See* 18 U.S.C. § 3553(a)(4)(A).

The court considered the "nature and circumstances of the offense and the history and characteristics of the defendant." *See* 18 U.S.C. § 3553(a)(1). Conspiracy to commit securities fraud is a serious offense. The financial markets depend on equal access to information and the individual integrity of those who come by inside information.

The defendant, aged 36, has no prior criminal record. He comes from a middle class family in the United Kingdom. His father works as an optician and his mother, now retired, previously helped in his father's business. The defendant's father has suffered from heath conditions, and the defendant has previously financially supported his parents and his sister. His family continues to reside in the United Kingdom.

The defendant completed high school but did not attend college. He began his career selling tea at the London stock exchanges and working as a courier. The defendant was largely a

self-made man, and he found it difficult to adjust when the global financial crisis severely and adversely affected his day trading business.

The defendant is married to an American woman. As a cause of his sentence, she will have to relocate with him to the United Kingdom, away from her family.

Incarcerating the defendant would delay his ability to return to work, harming his family and prolonging his inability to repay the government for his fraudulent activity. A sentence of two years supervised release reflects the seriousness of the offense and will promote respect for the law and provide just punishment. *See* 18 U.S.C. § 3553(a)(2)(A).

Under Section 3553(a)(2)(B), there are two major considerations: specific and general deterrence. General deterrence is satisfied with the sentence imposed. The sentence will send a clear message that any involvement in securities fraud will result in punishment, including financial penalties. Specific deterrence is achieved through the impact of this guilty plea on the defendant's employability and the loss of his ability to remain in the United States. It is unlikely that the defendant will engage in further criminal activity in light of his sincere remorse.

Jack B. Weinstein
Senior United States District Judge

Dated: October 15, 2013
Brooklyn, New York

5